**WO**                                                                                                          SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Royce-Wayne Gibbons, | No. CV 07-1456-PHX-SMM (JCG) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, | |
| Defendant. | |

    Plaintiff Royce-Wayne Gibbons brought this civil rights action in state court against Maricopa County Sheriff Joseph Arpaio; the matter was removed to federal court. (Doc. #1.) Defendant moves for partial summary judgment. (Doc. #31.) The motion is fully briefed.[1] (Docs. ##39, 40.)

    The Court will grant Defendant's motion for partial summary judgment and dismiss Count I.

**I.      Background**

    Plaintiff's Amended Complaint raised eight counts; on screening pursuant to 28 U.S.C. § 1915A, the Court dismissed Counts II, III, IV, V, VII, and VIII. (Doc. #14.) In the remaining Counts —I and VI—Plaintiff alleged that Defendant's May 1, 2007 mail policy, which prohibits inmates from receiving incoming mail sent in envelopes, violates Plaintiff's

---

[1] The Court issued a Notice pursuant to Rand v. Roland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #33.)

First Amendment rights (Count I) and that Defendant has not allowed Plaintiff to vote, which violates his Fifteenth Amendment rights (Count VI).

Defendant moves for partial summary judgment on Count I concerning the mail policy. In his First Amended Complaint, Plaintiff asserted that Defendant implemented a mail policy that eliminates all incoming "legal and non legal mail, commercial and non commercial correspondence contained in envelopes." Plaintiff claimed that he could "no longer receive correspondence from friends or family or outside resources that is not 'in plain view.'" (Doc. #11 at 3).

## II. Summary Judgment Motion

### A. Summary Judgment—Legal Standard

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

- 2 -

1 parties' differing versions of the truth at trial." First Nat'l Bank of AZ v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

**B.     Mail**

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (*per curiam*) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). Further, "[p]revention of criminal activity and the maintenance of prison security are legitimate penological interests which justify the regulation of both incoming and outgoing prisoner mail." O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996); see, e.g., Witherow, 52 F.3d at 265 (noting that security, order, and rehabilitation are legitimate penological interests that justify the inspection of outgoing prisoner mail).

To determine whether a regulation is reasonably related to a legitimate penological interest, the court must consider: (1) if there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it; (2) whether there are alternative means of exercising the regulated right that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have upon guards, other inmates, and prison resources; and (4) whether there exist ready alternatives that fully meet the inmate's demands at a *de minimis* cost to valid penological interests. Turner v. Safley, 482 U.S. 78, 89-91 (1987). Courts have generally applied the Turner standard when reviewing policies promulgated by county jails that impinge on pretrial detainees' First Amendment rights. See Von Minden v. Jankowski, 2008 WL 638085, *1 (5th Cir. March 7, 2008) (unpublished); Jones v. Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007); Mauro v. Arpaio, 188 F.3d 1054, 1058 (9th Cir. 1999); Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Friend v. Kolodzieczak, 923 F.2d 126, 127 (9th Cir. 1991); Pierce v. County

of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (also recognizing the requirement that any policy affecting pretrial detainees cannot be intended to serve a punitive interest, citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

### C.   Parties' Contentions

In support of his motion, Defendant submits his Statement of Facts (Doc. #32, DSOF) and the affidavit of John MacIntyre, Deputy Chief, Custody Bureau One (id., Ex. A, MacIntyre Aff. ¶ 1). Defendant notes that the mail policy in question applies only to non-privileged mail—that is, legal correspondence that an inmate receives from his or her attorney of record is not limited to postcards. (DSOF ¶ 6; MacIntyre Aff. ¶ 4.) The mail policy provides that inmates may receive an unlimited number of pieces of mail, without any restriction on the content of the communication,[2] so long as the communication is written in blue or black ink on a common postcard, and the postage is metered. (DSOF ¶ 23.) An exception to the policy has been made for mail from inmates incarcerated in the Arizona Department of Corrections (ADC); mail from ADC inmates may use stamps, which are manually removed from the postcard before distribution to the inmate. (DSOF ¶¶ 24-25).

Defendant argues that the mail policy complies with Turner's reasonableness standard. He asserts that the mail policy was necessary to combat the smuggling of contraband into the jails and to redirect resources from screening mail to security assignments. (Doc. # 31 at 7). Further, Defendant contends that the policy is content neutral and that no reasonable alternatives to this mail policy exist. (DSOF ¶¶ 19, 23, 28-29, 38-39.)

In response, Plaintiff argues that Defendant has not met his initial burden on summary judgment because the MacIntyre affidavit is conclusory. (Doc. #39 at 5.) He also asserts that two previously submitted affidavits—from Mark Howard and Sean Wingo—show genuine issues in dispute. (Id.) Plaintiff argues that he has met the requirements of filing a notice of claim and that Defendant is not immune from suit. (Id. at 6-7.)

---

[2] Inmates may not send or receive mail that contains directions to assault, kill, or intimidate other inmates or staff. (Doc. #31; DSOF ¶ 29.)

1    In his reply, Defendant contends that Plaintiff fails to introduce any admissible, controverting evidence to create a genuine dispute of fact. (Doc. #40.) Defendant also attaches a copy of the Order in Gieck v. Arpaio, CV 07-1143-PHX-NVW, granting summary judgment to Defendant on the issue of the mail policy.

**D.     Analysis**

As stated, when a prison regulation impinges on inmates' First Amendment rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89; O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). To determine whether a regulation is reasonably related to a legitimate penological interest, the court must consider: (1) if there exists a valid, rational connection between the prison regulation and the legitimate government interest put forth to justify it; (2) whether there are alternative means of exercising the regulated right that remain open to the inmate; (3) the impact accommodation of the asserted constitutional right will have upon guards, other inmates, and prison resources; and (4) whether there exist ready alternatives which fully meet the inmate's demands at a *de minimis* cost to valid penological interests. Turner, 482 U.S. at 89-91. Evaluation of penological objectives is committed to the considered judgment of prison administrators who are actually charged with and trained in the running of the particular institution under examination. O'Lone, 482 U.S. at 349.

**1.     Rational Connection to Legitimate Governmental Interests**

The Court must determine whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective. Thornburgh, 490 U.S. at 414.

Initially, Defendant must advance a "valid, rational connection" between a policy or procedure and the legitimate governmental interest cited to justify it. Turner, 482 U.S. at 90. "Specifically, the 'logical connection between the regulation and the asserted goal' must not be 'so remote as to render the policy arbitrary or irrational,' and the governmental objective must be both 'legitimate and neutral.'" Frost v. Symington, 197 F.3d 348, 354 (9th Cir. 1999) (quoting Turner, 482 U.S. at 89-90)).

- 5 -

1         Defendant asserts that the purpose of the mail policy is to "prevent the smuggling of
2 contraband [into the jails] to promote the safety and security of the inmates and MCSO
3 Deputies working within the jail system." (Doc. # 31 at 5; DSOF ¶ 26). MacIntyre attests
4 that between 9,000 and 10,000 inmates are incarcerated within the Maricopa County jail
5 system at any given time. (Doc. # 32, Ex. A, MacIntyre Aff. ¶ 5). Further, each day the
6 Maricopa County jails receive roughly between 2,000 and 4,000 pieces of mail for inmates.
7 (Id. ). Each piece of mail is inspected to determine whether contraband was contained in the
8 envelope. (Id.). During the past three years, the MCSO (Maricopa County Sheriff's Office)
9 has experienced an increase in the number of incidents of attempted smuggling of contraband
10 into the jail system. (Id. ¶ 6.) Specifically, (1) the back of postage stamps have contained
11 various drugs, bodily fluids, and other unknown liquids and powders and (2) notepad
12 bindings have been hollowed to conceal contraband such as handcuff keys, metal strips or
13 pieces, and saw blades. (Id.) In response to the growing number of incidents of contraband
14 smuggling, the MCSO crafted and implemented the instant mail policy to limit the *method*
15 of communication without limiting the substance of communication between inmates and
16 others. (Id. ¶ 8.)

17         Jail security is a legitimate penological interest. See Turner, 482 U.S. at 91.
18 Defendant's evidence demonstrates that the reduction of contraband smuggling is a
19 legitimate goal of the Maricopa County Jails and that the mail policy is reasonably related
20 to furthering that goal. The policy is also neutral on its face—there is nothing to indicate that
21 the aim of the policy is to suppress expression. Thornburgh, 490 U.S. at 415-16 ("the
22 regulation or practice in question must further an important or substantial governmental
23 interest unrelated to the suppression of expression").

24         In opposition, Plaintiff offers no argument on any of the separate Turner factors. In
25 addition, the affidavits of Howard and Wingo address only matters related to exhaustion of
26 remedies, not the merits of the claim or the Turner factors. (Doc. #18.)

27         "[W]hen the inmate does not present enough evidence to refute a common-sense
28 connection between a prison regulation and the objective that government's counsel argues

- 6 -

1  the policy was designed to further . . . Turner's first prong is satisfied." Frost, 197 F.3d at
2  357 (internal quotations omitted). Plaintiff fails to show that there is a genuine issue for trial.
3  Anderson, 477 U.S. at 249.

### 2.  Alternative Means of Communication

The second factor is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'" Id. (citations omitted). Further, the Court must view the right in question "sensibly and expansively." Thornburgh, 490 U.S. at 417 (quotations omitted).

Here, the right in question is the ability to communicate with family and friends. See Pope v. Hightower, 101 F.3d 1382, 1385 (11th Cir. 1996). Defendant contends that inmates' right to communicate is not limited because an inmate may send and receive an unlimited amount of mail without any limitation on the content of such mail. (DSOF ¶ 23.) The only restriction is that communication through the mail must be written on a postcard. Plaintiff is still able to receive and send an unlimited amount of mail. Plaintiff does not address this factor, and, in the absence of any specific evidence to the contrary, the Court concludes that inmates have alternative means of communication.

### 3.  Adverse Impacts of Accommodation on Prison Staff, Other Inmates, and Prison Resources

The third factor requires the Court to analyze the impact that allowing inmates to send and receive mail other than postcards would have on prison personnel, other inmates, and the allocation of jail resources. Mauro, 188 F.3d at 1061 (citing Turner, 482 U.S. at 90).

Defendant has introduced evidence that non-postcard mail substantially increases the likelihood of smuggling contraband into the jail, thereby causing conflict between inmates, confrontations, and violent acts relating to contraband transactions among inmates. Further, the influx of contraband smuggling resulted in a significant increase in the use of staff resources to inspect non-legal mail for contraband. (DSOF ¶¶ 12-13.)

Plaintiff has not addressed this factor of the Turner analysis. Consequently, he has not met his burden of refuting Defendant's claim that allowing inmates to use sealed envelopes containing letters, notepads, and other items would threaten the safety and security of inmates and guards who might be endangered by the contraband smuggled into the jail. On this very limited record, the Court concludes that "the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike[.]'" Thornburgh, 490 U.S. at 418 (citing Turner, 480 U.S. 90). Therefore, "the court should defer to the 'informed discretion of corrections officials.'" Id.

### 4. Existence of Obvious, Easy Alternatives

The final factor requires the Court to determine whether the mail policy is an "exaggerated response" to the jail's concerns. Mauro, 188 F.3d at 1062. On this prong, Plaintiff bears the burden to show there are obvious, easy alternatives to the regulation. Id.; see O'Lone, 482 U.S. at 350. Turner also made clear that:

> This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

482 U.S. at 90-91 (citations omitted).

Plaintiff does not address this factor. In the absence of any evidence of alternative solutions, Plaintiff has not met his burden to show any obvious or easy alternatives to the mail policy.

Based on the limited factual record and Defendant's undisputed evidence, the Court finds that the mail policy survives the Turner analysis. Defendant is therefore entitled to summary judgment on Count I. A case with a more developed body of facts and supporting evidence would require a "fresh look." See Gieck v. Arpaio, 2008 WL 2604919, *8 (D. Ariz. June 23, 2008).

- 8 -

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Partial Summary Judgment (Doc. # 31). All other matters will remain with the Magistrate Judge.

(2) Defendant's Motion for Partial Summary Judgment (Doc. #31) is **GRANTED,** and Count I is dismissed with prejudice.

(3) The remaining claim is Count VI.

DATED this 2nd day of October, 2008.

Stephen M. McNamee
United States District Judge